## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JEANNE LUDWIG,**<br><br>          **Plaintiff,**<br><br>**v.**<br><br>**MICHAELS ARTS & CRAFTS STORE,**<br>**JOHN DOES 1-10,**<br>**AND**<br>**XYZ CORPORATIONS 1-10**<br><br>          **Defendants.** | Civ. No. 18-10306 (KM) (SCM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Before the Court is the motion of defendant Michaels Stores, Inc.[1] for summary judgment dismissing plaintiff Jeanne Ludwig's negligence complaint. For the reasons explained in this opinion, I will grant defendant's motion to the extent it requests the Court to dismiss the action based on plaintiff's failure to raise a genuine issue of material fact for trial as to the essential element of causation.

### I.    Summary[2]

### a.  Factual Background

On October 12, 2017 Ludwig was shopping at the Michaels store in Bridgewater, New Jersey, when she tripped and fell over the base of a railing while backing up inside a shopping cart corral inside the store. (DE 25-1 at 6;

---

[1]    Incorrectly pled as Michaels Arts & Craft Store.

[2]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

   "DE" = Docket entry number in this case.

DE 27 at 7) Prior to the accident, Ludwig was looking for orange lights to display on her windowsill. (DE 25-3 at 4) After looking for the lights for about fifteen minutes, Ludwig proceeded to the cashier section and asked a cashier where she could find the lights. (DE 25-3 at 5) A worker instructed Ludwig that the lights were located "over to the left on the other side of the store." (DE 25-3 at 5) Ludwig testified, "I went past the rest of the cashiers up an aisle where I thought was an aisle but I got up there and I couldn't go any further. It was blocked by carts." (DE 25-3 at 6) She then "took at least three steps" before she was stopped by the carts. (DE 25-3 at 6) She testified that she did not see the carts as she entered what appeared to be an aisle, and that she would not have gone in there if she had seen them. (DE 25-3 at 6). To her, "[i]t looked like a regular aisle." (DE 25-3 at 5) In fact, however, it was a corral for storage of shopping carts. Ludwig asserted that she does not have vision problems and that she was not distracted in any way as she entered the aisle. (DE 25-3 at 6) She also asserted that she walked backwards to retrace her steps "[b]ecause the shopping cart wouldn't turn around in that area." (DE 25-3 at 7)

As Ludwig backed up three steps and looked over her right shoulder, her left "foot hit the base [of the railing] and [she] went down." (DE 25-3 at 7-8) Ludwig could not recall on which base she tripped. (DE 25-3 at 8) She thought, however, that it was the last base before the end of the area. (De 25-3 at 8) While Ludwig was aware of the railings, she was not aware there was a base to the railings. (DE 25-3 at 8-9) Originally, she thought the base "had gone into the floor." (DE 25-3 at 9) Ludwig was certain that her foot hit the base, as opposed to the railing, but she was not sure which part of the base. (DE 25-2 at 9) Ms. Ludwig testified that there was nothing "else on the floor in terms of debris." (DE 25-3 at 9) As a result of the accident, Ms. Ludwig sustained a fractured hip and a displaced left femoral neck fracture. (DE 25-4 at 3) Prior to this incident, Ludwig had visited the Bridgewater store about fifty times. (DE 25-3 at 3)

The assistant store manager at the time of the incident, Shanae Banks, also testified in a deposition. (DE 27-3 at 3) She stated that she could not recall

if there were any signs to indicate to patrons that they should stay out of the corral area unless they were retuning a cart. (DE 27-3 at 5) Banks testified that, generally, it is not intended for customers to walk through the cart corral area. (DE 27-3 at 13) There is a "sign holder" for the store's ads which blocks customers from traversing the corral. (DE 27-3 at 13) There is also a fixture behind the sign, where the store "keep[s] overstock candy and stuff." (DE 27-3 at 13) She further testified that it would be "possible" for a customer to walk through the corral if it were empty. (DE 27-3 at 13) Banks herself never noticed that the base of the cart corral's railing is higher than the floor. (DE 27-3 at 14) She also testified that she did not observe the accident. (DE 27-3 at 9)

The store manager, Brianne Melin, was not on duty when the incident occurred. (DE 27-4 at 2, 4) Melin testified that there are normally carts located in the corral, but on busier days the area may become empty. (DE 27-4 at 6) If there were no carts, one could walk through the area. (DE 27-4 at 6) However, it is not intended for customers to use the corral as a thoroughfare because there are "typically carts there." (DE 27-4 at 6) She could not "recall any other incidents of customers falling in the store." (DE 27-4 at 9)

Plaintiff's expert, Wayne F. Nolte PH.D., P.E., conducted an evaluation of Ludwig's accident. (DE 25-6 at 4) In his report, Nolte described the cart corral. The area contains two raised rails between which carts are lined. The rails are steel tubes one and a half inches by one and a half inches. (DE 26-8 at 8) The rails "are elevated twenty-five inches (25") above the floor and run a length of twelve feet seven inches." (DE 25-6 at 8-9) The distance between them is four feet four inches. (DE 25-6 at 9) The rails "are supported by posts that are secured into base plates." (DE 25-6 at 9) Those base plates are five and three-quarter inches long, three and a half inches wide, and one and one-quarter inches high. (DE 25-6 at 9) Steel tubular posts are "mounted into the center of each plate." (DE 25-6 at 9) Those posts are one and a half inches by one and a half inches. (DE 25-6 at 9) Nolte also explained that "merchandise was immediately beyond the most interior rail restricting access to the opposite side

of the store through the area immediately adjacent to the cart corral." (DE 25-6 at 9)

Nolte noted that while customer will see the rails, they will not notice "the base plate that is larger than the rails and posts. The base plates are not brightly colored to attract attention nor are they barricaded in any way so that a customer does not come in contact with them." (DE 25-6 at 13) Nolte opined that "concrete could have easily been poured to receive a post, support the base and eliminate the hazard of the extended base plate into a foreseeable path of travel for a customer." (DE 25-6 at 14)

Relying on the National Safety Council, Nolte explained that "the primary causes of trip hazards are elevation differentials one-quarter inch (1/4") or more in height, unobserved or poorly designed fixtures or displays and low profile items in an aisle or walkway." (DE 25-6 at 15) Because "there are times when the cart corral may have only a few carts in it and customers need to go into the cart corral in order to retrieve a cart," the area in the corral may reasonably be walked upon. (DE 25-6 at 14) When customers "back out of the cart corral the low rise trip hazard of the base plates is present." (DE 25-6 at 14) "[W]hen items are on the floor such as the base plate or a platform for a mannequin in the store the base should be at least twelve inches (12") high and its edges should be highlighted." (DE 25-6 at 15)

Nolte also referred to the American Society for Testing and Materials ("ASTM"), and in particular, its "Standard Practice for Safe Walking Surfaces." (DE 25-6 at 16) That provision "addresses minimum maintenance criteria for reasonably safe walking surfaces." (DE 25-6 at 16) The ASTM provides that, to be safe, a "walkway surface . . . must be stable, planar, flush and even." (DE 25-6 at 17) According to his report, the area where Ludwig fell was not planar, flush or even, because there was "a one and one-quarter inch (1-1/4") high base plate that projected beyond the rails. This created an unstable walking surface." (DE 25-6 at 17) Nolte noted that, at the time of the accident, Ludwig "was looking over her shoulder to monitor the position of the rails so that she could safely back out of the cart corral system. What was not made known to

4

her was the projection of the low rise trip hazard in her path of travel created by the base plates." (DE 25-6 at 17) The ASTM provides that the use of warnings "must be conspicuous, contrast with the surrounding environment and be of bright color." (DE 25-6 at 18) However, "[n]o such warning was on the base plates that projected outward from the cart corral rail system." (DE 25-6 at 18)

Nolte, "to a reasonable degree of engineering certainty based upon [his] education, training and experience in engineering, inspection of accident site, review of the accident with [Ludwig] and review of the materials," concluded as follows: (1) "The accident site was in a hazardous condition"; (2) "The hazardous condition was the presence of a base plate for the cart corral system that projected into a foreseeable and accessible path of travel for customers; (3) Defendant "failed to recognize that customers going into the cart corral system would pull a cart out by backing out. In so doing, they would have a reasonable opportunity to come in contact with the low rise trip hazard of the base plates that project into their foreseeable path of travel"; (4) "The simple solution to eliminate the trip hazard at the accident location was to core the concrete floor and set the posts into the floor to entirely eliminate the base plates"; (5) "The area where Jeanne Ludwig's accident occurred was a foreseeable and accessible walking surface that was not in a safe condition" and "the base plates did not contain any highlighted color such as orange, yellow or red to attract customer attention to this low rise trip hazard"; (6) "The treatment needed at the accident location is to set of the cart corral rail system posts into the concrete floor through a core"; (7) Defendant "failed to inform their management staff to look for low rise trip hazards such as the base plates on the cart corral system" and "failed to inform their management that the aisle way adjacent to the cart corral needed to be clear for passage from one side of the store to the other"; and (6) "[H]aving a cart corral inside the store in what at the time of this accident was the only foreseeable path of travel from the right side of the store to the left side of the store at the front of the store for Jeanne

Ludwig created a hazardous condition which ultimately caused Jeanne Ludwig to trip and fall." (DE 25-6 at 20-21)

In contrast, defendant's expert, Harold M. Tepper, P.E. opined that Ludwig did not trip and fall because of the conditions of the cart corral, but rather as a result of "her own negligence." (DE 25-7 at 2) Ludwig's negligence included (1) "Being confused or having memory loss when she attempted to navigate a cart corral partially filed with shopping carts that she knew or should have known did not allow her the passage she desired;" and (2) "Attempted to back out of the cart corral with a limited vision of existing conditions when she readily could have turned around within the corral with her cart and been able to see existing corral conditions, including its supporting posts and the bases at the bottom of the posts." (DE 25-7 at 2-3) According to Tepper, "[h]ighlighting the incident low-rise base was not required and was irrelevant to the fall since Ms. Ludwig was looking over her right shoulder, and not her left shoulder, as she was walking backwards at the time of her alleged incident." (DE 25-7 at 3) Further, "the low-rise base at which Ms. Ludwig allegedly tripped was within the 'path of travel envelope' created by the outside face of a continuous plastic bumper fastened to the full length face of the corral's horizontal top railings." (DE 25-7 at 3) Thus, "[d]ue to her own negligence, Ms. Ludwig's left foot went beyond the corral railings' established path of travel envelope when the foot encountered a corral post base (that was located also outside of the corral's established path of travel envelope) and tripped, fell and became injured." (DE 25-7 at 3)

### b. Procedural History

On March 8, 2018, Ludwig initiated a one-count negligence action against defendant Michaels in the Superior Court of New Jersey, Law Division, Middlesex County, New Jersey.[3] (DE 1 at 1; DE 1-1 at 5-6) Defendant removed the matter to this Court pursuant to 28 U.S.C. § 1446.

---

[3] In Count II, Ludwig asserted a negligence action against all unidentified persons or entities. (DE 1-1 at 6)

The matter proceeded to arbitration on January 22, 2020. (DE 28-8 at 2) The arbitrator, Maurice J. Gallipoli, A.J.S.C. (ret.), first concluded that the base plates in question "were not in what one would consider the 'walkway', rather they constituted the supports for the corral posts which delineated and thus created the walkway, making Nolte's opinions inapplicable to the undisputed facts of the case." (DE 25-8 at 3) Further, the arbitrator found the base plates "were black, contrasted with the light colored floorings," and "clearly stand out in the photos." (DE 25-8 at 3) Therefore, he "reject[ed] Nolte's opinion that they were in need of something more than is depicted to 'highlight' them for customer safety." (DE 25-8 at 3) Moreover, because plaintiff was "looking over her shoulder" when the accident occurred, the arbitrator found it "hard to understand how she would [have] been able to see the base plate that she came in contact with, black or otherwise highlighted." (DE 28-8 at 3) Given the above, the arbitrator concluded that a "no cause for action" judgment should be entered in favor of defendant and that the Complaint should be dismissed with prejudice. (DE 25-8 at 3)

Because he found plaintiff failed to present 'a case sufficient to allow for jury consideration and determination," he did not rule on the issue of plaintiff's comparative fault. (DE 25-8 at 3) If pressed, however, the arbitrator explained that he "would find, on the undisputed facts of this case, that Plaintiff was more negligent than Defendant and thus barred from recovery." (DE 25-8 at 3)

Thereafter, on February 4, 2020, Ludwig requested a trial de novo pursuant to Local Rule 201.1(h). (DE 24) Defendant then filed its motion for summary judgment. (DE 25)

## II.   Discussion

### a.  Legal standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247–48,

106 S. Ct. 2505, 2509–10 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). That is, the moving party must demonstrate that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Id.*

On the other hand, "with respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23, 106 S. Ct. at 2552).

To demonstrate the existence of a genuine issue, a party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Likewise, "unsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rather, a party must present evidence sufficient to create a triable issue. *Anderson*, 477 U.S. at 248–49, 106 S. Ct. at 2510; *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence

to allow a jury to find in its favor at trial."). By evidence, the Rule means "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In construing such evidence, however, the court must draw inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49, 106 S. Ct. at 2510. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

### b. Net Opinion Rule

Defendant argues that Nolte's opinions must be excluded as mere net opinions. (DE 25-1 at 13) It contends that the conclusions "are not based upon the uncontroverted facts, but rather assumptions," and "are buttressed by reference to engineering standards which are inapplicable to the location of plaintiff's fall." (DE 25-1 at 13)

New Jersey Evidence Rule ("N.J.R.E") 702 provides for the admission of expert testimony: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

N.J.R.E. 703 establishes the proper basis for expert opinions:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the proceeding. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

New Jersey's "net opinion" rule provides "that an expert's bare conclusions, unsupported by factual evidence, is inadmissible." *Buckelew v. Grossbard*, 435 A. 2d 1150, 1156 (N.J. 1981) The rule "frequently focuses . . . on the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom." *Id.* It "requires an expert 'to give the why and wherefore' of his or her opinion, rather than a mere conclusion." *Rosenberg. Tavorath*, 800 A.2d 216, 226 (N.J. Super. Ct. App. Div. 2002) (quoting *Jimenez v. GNOC, Corp.*, 670 A.2d 24, 27 (N.J. Super. Ct. App. Div. 1996)). Thus, "expert testimony is excluded if it is based merely on unfounded speculation and unquantified possibilities." *Vuocolo v. Diamond Shamrock Chemicals Co.*, 573 A.2d 196, 202 (N.J. Super. Ct. App. Div. 1990). Instead, experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and methodology are reliable." *Townsend v. Pierre*, 110 A.3d 52, 55 (N.J. 2015) (internal quotation marks omitted) (quoting *Landrian v. Celotex Corp.*, 605 A.2d 1079, 1086 (N.J. 1992)

Nevertheless, "[t]he net opinion rule is not a standard of perfection." *Id.* at 54. "The rule does not mandate that an expert organize or support an opinion in a particular manner that opposing counsel deems preferable," and such opinion "should not be excluded merely 'because it fails to account for some particular condition or fact which the adversary considers relevant." *Id* (quoting *Creanga v. Jardal*, 886 A.2d 633, 642 (N.J. 2005)). Provided the expert presents sufficient reasons to support his opinion, the omission of a particular fact or condition may be properly explored on cross-examination. *Id.*

In *Townsend*, the New Jersey Supreme Court held that the trial court properly excluded the causation opinion of the plaintiff's expert where the expert acknowledged defendant's testimony but contended that her account was mistaken. *Id.* at 56. That action arose from a fatal accident between the driver of an automobile, Pierre, and the driver of a motorcycle. *Id.* at 55-56. The driver "was turning left at an intersection controlled by a stop sign." *Id.* at 56.

The plaintiffs alleged the owner of "a property located on a corner of the intersection where the accident occurred . . . negligently maintained overgrown shrubbery on their property, blocking Pierre's view of oncoming traffic at the intersection." *Id.* Pierre testified that the shrubbery "initially obscured her view," but that, after she hedged forward, her "view of oncoming traffic was unimpeded." *Id.* In other words, when Pierre turned, "she had an unobstructed view of approaching traffic." *Id.* Pierre's account was corroborated by the front-seat passenger of the automobile. *Id.* at 57. There was "no testimony to the contrary." *Id.* at 56. Nevertheless, the expert opined that the overgrown shrubbery was a proximate cause of the accident. *Id.* The expert maintained that Pierre's account of the accident must have been mistaken. *Id.* The Supreme Court concluded that, based on "the uncontradicted testimony of Pierre and her passenger that Pierre's view of oncoming traffic was unimpeded," the lower court properly excluded the expert's causation opinion. *Id.* The Court reasoned that such opinion "was a net opinion that was not only supported by the factual evidence, but directly contradicted that evidence." *Id.*

Here, defendant proffers seven reasons that Nolte's report constitutes a net opinion: (1) the cart corral was not a walkway because it was not designed for customers to traverse (DE 25-1 at 17); (2) even if the area was a walkway, the base plates did not extend into the walkway area so there is no deviation from the standards Nolte relied upon (DE 25-1 at 19); (3) the color of the base plates provided adequate warning to customers (DE 25-1 at 19); (4) nevertheless, any warning was immaterial because Ludwig was walking backwards when the accident occurred and did not make proper observations (DE 25-1 at 20); (5) there is no standard requiring the railing be cored into the floor (DE 25-1 at 21); (6) Ludwig cannot establish that the base plate extending into the walkway is what caused her fall (DE 25-1 at 22); and (7) the corral area was not the only foreseeable path of travel (DE 25-1 at 23). Those arguments, I find, may go to the weight that a fact finder could give Nolte's report, but do not require its exclusion as a net opinion.

First, Nolte provided more than "bare conclusions." *See Buckelew* 435 A.2d at 1156. He noted the materials he relied upon, he took and described the measurements of the corral area, and he described and attached the relied-upon safety standards. Critically, he acknowledged, and did not attempt to discredit, plaintiff's factual account of the manner in which the accident occurred. Nolte justified his reliance on standards for walkways by noting that there are times when customers will have to walk into the corral area to obtain a cart. (DE 25-6 at 14) Thus, even if customers are not to use the corral area as a through route, they will be entering it from time to time to obtain a cart. Melin testified that on busier days, the corral area may become empty (DE 27-4 at 6); it therefore stands to reason that at times the corral may contain only a few carts, so the customer must enter the corral area to obtain one. (*See* 25-6 at 14). It is therefore not unreasonable to apply walking surfaces guidelines to the area in question.

Second, defendant makes a number of arguments that even if the walking surfaces standards apply, the condition of the corral did not deviate from those standards. (DE 25-1 at 19) Such a determination is for the jury; the expert's role is to help the jury determine a fact in issue, not to dictate those determinations. *See* N.J.R.E. 702. Defendant contends that the "photographs confirm that the baseplates extended no further than the interior bumper of the cart corral, and thus they did not extend into the interior of the cart corral." (DE 13 at 26) That Nolte did not include the bumpers in his report is not an adequate reason to disregard the report as a whole. *See Townsend*, 110 A.3d at 54. That omission may be explored on cross-examination. *Id.* A jury then might or might not see fit to reject Nolte's opinions and conclude that (1) the bumpers prevent the base plates from entering the walking surface area and (2) the area complied with applicable standards. Those, however, are not facts but *issues* of fact; they are not the stuff of summary judgment.

The same logic applies to defendant's argument that the cart corral was not the only foreseeable path of travel. (DE 25-1 at 23) Nolte testified that

merchandise blocked the path of a customer from walking parallel to the corral area to the other side of the store, while Defendant submits that there was another alternative, *i.e.,* for Ludwig to retrace her steps. (*Compare* DE 25-6 at 9 *with* DE 25-1 at 23.) Such a factual dispute is for the jury. It does not render Nolte's report a mere not opinion.

Defendant attacks Nolte's report on the basis of Ludwig's inability to say whether the portion of the base plate on which she fell was the same portion identified as an improper extension. (DE 25-1 at 22) That is not so much a "net opinion" argument, however, but rather an argument that Ludwig has failed to meet her burden of proof. That argument will be addressed below.

### c. Negligence Standard

 "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend*, 110 A.3d at 61 (quoting *Polzo c. County of Essex*, 960 A.2d 375, 384 (N.J. 2008)). The plaintiff must establish those elements "by some competent proof." *Id.* (internal quotation marks omitted) (quoting *Davis v. Brickman Landscaping, Ltd.*, 98 A.3d 1173, 1179 (N.J. 2014)).

Here, defendant contends that plaintiff failed to establish proof of causation. (DE 25-1 at 28; DE 28 at 18) Proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Townsend*, 110 A.3d at 61 (internal quotation marks omitted) (quoting *Conklin v. Hannoch Weisman,* 678 A.2d 1060, 1071 (N.J. 1996)). To establish causation, the plaintiff must

> introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

*Id.* at 66-68 (quoting *Davidson v. Slater*, 914 A.2d 282, 293 (N.J. 2007)

Defendants contend that even if the cart corral was improper because the base plates extended into walkway, Ludwig "cannot substantiate that the improper aspect of the cart corral railing base plate (that is, the part alleged to extend into the walkway) is what caused her to fall." (DE 25-1) Plaintiff concedes that Ludwig does not know or recall which portion of the baseplate caused her fall. (DE 27 at 25) According to defendants, that gap in the proofs is fatal, because "[w]ithout linking the alleged violation to the fall, Plaintiff cannot prove that the alleged negligence by Michaels proximately caused [her] injuries." (DE 25-1 at 22)

Ludwig submits that, granting her the benefit of all reasonable inferences, the fact that she "did not see which part of the base plate her foot came in contact with and caused her to fall does not eliminate the possibility that a reasonable jury could conclude [her] fall was caused by the hazardous condition created by Defendant's improper placement of the baseplate in the cart corral area." (DE 27 at 26-27)

Ludwig bears the burden of establishing causation "by some competent proof." *See Townsend*, 110 A.3d at 61. On summary judgment, "with respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case," then there is no genuine issue of material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz*, 972 F.2d at 55 (3d Cir. 1992) Ludwig was required to submit evidence establishing that it was more likely than not defendant's improperly extending the base plates into the walking area caused her fall. *See Townsend*, 110 A.3d at 61 (quoting *Davidson*, 914 A.2d at 293). A mere possibility that Ludwig

contacted the portion of the base plate that extended into the walkway – as opposed to the portion of the base plate that did not extend into the walkway – will not be sufficient to discharge her burden of proof  at trial. *See Id.* Plaintiff concedes there are two possibilities that caused her fall: "1) her foot caught on the interior section of the base plate which dangerously extended into the walk; or 2) her foot could have caught the portion of the base plate directly under the railing which was *not* extending into the walkway area," which would relieve defendant of liability. (DE 27 at 25) "[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Townsend*, 110 A.3d at 61 (quoting *Davidson*, 914 A.2d at 293). Here, that means granting summary judgment in favor of defendant.

Ms. Ludwig's accident was real, and her injuries are surely real; any decent person must sympathize. But to hold Michaels liable for her accident, Ludwig is required to submit proof that the extended base plate *caused* her fall. She has failed to produce evidence of that; she herself does not know, and there appears to be no relevant third-party testimony or video evidence. Therefore, Ludwig has failed to establish that there is a genuine issue of material fact for trial—*i.e.,* that she possesses evidence from which a jury could legitimately find by a preponderance of the evidence that defendant's negligently-kept cart corral caused her injuries.

### III.    Conclusion

For the reasons set forth above, I will grant defendant's motion (DE 25) for summary judgment. The action is dismissed. An appropriate order follows.
Dated: November 23, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**